## ILLINOIS TORPEDO CO. v. ELLIS.
### (No. 9652.)

(Court of Civil Appeals of Texas.     Fort Worth.
June 11, 1921.)

**I. Master and servant ⊕⇒278(20)—Evidence held not to support theory that master informed servant oil well was in good condition for shooting.**

In an employee's action for injuries sustained in shooting an oil well for third parties, plaintiff's own testimony *held* not to justify recovery on the theory that defendant negligently informed him that the well was in good condition for shooting.

**2. Trial ⊕⇒350(6), 352(1)—Charge submitting issue of negligence in furnishing nitroglycerin squib held too general.**

In an employee's action for injuries sustained in shooting an oil well with nitroglycerin, where the only question for the jury was that of defendant's negligence in furnishing a leaky squib to hold the nitroglycerin, an issue whether defendant was negligent in furnishing plaintiff the kind and character of squib and weight he was furnished was calculated to impress the jury with the idea that they could consider dangerous characteristics of the squib other than its leaky condition, and could consider the weight suspended to the squib, especially where the charge was in general language, and the court should have submitted the issues whether the squib was leaky, whether defendant was negligent in furnishing it in that condition, whether its leaky condition caused the accident, and whether defendant should reasonably have foreseen an accident of that character.

**3. Master and servant ⊕⇒286(19)—Negligence in furnishing nitroglycerin tube held question for jury.**

In an action for injuries sustained by an employee while shooting an oil well, in which he alleged negligence on the part of the employer in furnishing him a leaky tube for nitroglycerin, where he testified that the explosion could not have occurred unless some of the nitroglycerin was on the outside of the tube, and that it could not get on the outside of the tube unless the tube was leaky, because he had thoroughly washed it, a peremptory instruction was properly refused.

Appeal from District Court, Wichita County.

Action by W. M. Ellis against the Illinois Torpedo Company. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

Weeks, Morrow, Francis & King, of Wichita Falls, for appellant.

E. W. Napier, of Wichita Falls, and Ed Yarbrough, of Electra, for appellee.

DUNKLIN, J. The Illinois Torpedo Company has appealed from a judgment in favor of W. M. Ellis for $7,200 as compensation for personal injuries sustained by plaintiff by reason of an explosion of nitroglycerin while plaintiff was preparing to "shoot" a well in the Burkburnett oil field, and which explosion, according to plaintiff's allegations, was the proximate result of defendant's negligence.

Plaintiff was an employee of the defendant, who maintained an office in the town of Electra, some 14 miles distant from the place of the accident. He had been handling nitroglycerin for about 30 years, and had been engaged for 10 years in shooting wells by using that explosive. Men who engage in the business of shooting wells are called "shooters," and defendant had other shooters employed at Electra besides plaintiff, at the time of the accident. The shooting of a well consists in exploding nitroglycerin at the desired spot inside the well, and shooting in some instances is resorted to in order to so break a joint in the metal casing as to permit its removal from the well. Nitroglycerin is first poured into a metal tube, called an electric squib, and the squib, with its contents, is then lowered into the well by means of a wire running over a pulley to the desired depth where the explosion is to take place. The nitroglycerin is exploded by electricity passing through the wire that is attached to the squib. The squib used on the occasion in controversy was about 2 feet long and about 2 inches in diameter, and into it was poured about one quart of nitroglycerin, weighing one pound. The tube or squib, empty, weighed four or five pounds, and after being filled it was so lacking in weight as to necessitate the suspension of a metal weight about the size of a window weight, to the lower end of the tube and hanging two feet below it, in order to hold the tube to the center of the casing, and thus avoid friction with the sides. The casing in the well in controversy was $6^5/_8$ inches in diameter, thus leaving a space between the outer side of the tube and the inside of the casing of about 2 inches. As a further precaution against friction between the tube and the wall of the casing, the tube was equipped on its outer side with a wire screen to hold it clear of contact with the casing. The four stiff wires constituting the screen are pressed down against the squib until it is ready to be lowered into the well, at which time they are stretched out sufficiently to touch the casing and thus hold the squib clear of contact with the casing.

On the day of the accident defendant's manager, in charge of its office and business in the town of Electra, received an application from the persons in charge of the well at Burkburnett to shoot it. The manager thereupon selected plaintiff to do the work and gave him a card so notifying him. Defendant kept on hand at its place of business in Electra a supply of empty electric squibs

for use by those whose duty it was to use them, and whenever such an employee was directed to do such work it was left to him to select a tube suitable for that purpose. When plaintiff was told by the manager to go and shoot the well, of his own volition, he selected a tube that another shooter had left in a car. There were other tubes in what was called the shell house at defendant's place of business, near by, but he thought that one suitable and safe. In the shell house there was also provided a simple method, with which plaintiff was familiar, of testing a tube by the use of water, to determine whether or not it would leak, but plaintiff did not make such a test, because, after he had inspected the tube, he was satisfied it would not leak. If a tube leaks nitroglycerin, that fact renders its use exceedingly dangerous, because, if any of the liquid is on the outside of the tube, any friction with it will cause an explosion of the entire contents. A jar of the tube will also cause such an explosion. Plaintiff planned to shoot the well by means of electricity to be passed through the wire to which the tube was attached, when the tube had reached the desired spot in the well.

The allegations of negligence, contained in plaintiff's petition and upon which his suit was based, were as follows:

"Plaintiff further alleges that at the time and place of said accident defendant did not use the proper care and caution, skill and diligence as it should have done for the protection of the plaintiff, but, on the contrary, it was negligent and unskillful in preparing said nitroglycerin tubes for plaintiff to use in shooting said well and furnished plaintiff with a leaky tube which defendant knew was unsafe, and that plaintiff was informed by defendant's agents, servants, and employees that the well he was to shoot was in good condition when in fact it was not, and the casing was not in its proper place in said well, and when the leaky tube struck the misplaced casing, a friction was created which caused the explosion and caused plaintiff's injuries."

[1] It was customary before shooting a well and before letting down the squib, to first let down some object to see whether or not the hole was free of obstructions, such as mud or collapsed casing. Plaintiff testified as follows:

"I did not run anything in the well to find its condition. I supposed they did; they told me the well was O. K. I supposed the men in charge of it did it. I don't know the names of the men in charge—the rotary men. They were not working for the Illinois Torpedo Company. They were working for the company for which we were going to shoot the well. When I went there, I inquired, and the people for whom I was going to shoot the well told me the hole was in good shape. They were the only ones that told me. * * * Nobody was there to tell me how to do that at all. I was left to do it the way I thought proper, and I didn't run any-

thing in the hole. This nipple they put in looked O. K. I did not know the condition of the casing from below the nipple, only the men that worked there said it was all right. I did not know how much mud it had in it, nor do I know the thickness of the mud. I do not know how close the mud was to the top of the hole."

The evidence of plaintiff himself, just quoted, was sufficient, of itself, to refute any right of recovery upon his allegation that defendant negligently informed him that the well was in good condition for shooting. With that issue eliminated, the only other issue of negligence relied on by plaintiff was the alleged negligence of defendant in furnishing him a leaky tube with which to do the shooting.

[2] The court gave to the jury the following instructions:

"While the plaintiff was in the employ of the defendant and shooting wells for the defendant, it was the duty of the defendant to exercise ordinary care to furnish him with reasonably safe appliances and to exercise ordinary care in the use of reasonable precautions to make his employment as safe as it could reasonably be made, considering the inherent dangerous nature of the work, and any failure upon defendant's part to exercise this care would be negligence.

"Issue No. 1: Was the defendant company guilty of negligence, as that term has been defined to you, in furnishing the plaintiff the kind and character of squib and weight he was furnished, at the time of the explosion?"

With all other issues of negligence eliminated from plaintiff's case, except that of the furnishing to him a leaky tube, the court should have submitted: First, the issue whether or not the tube so furnished was in fact in a leaky condition; second, whether or not the defendant was guilty of negligence in furnishing the same to plaintiff in that condition; third, whether or not the leaky condition of the tube was the cause of the accident; and, fourth, whether or not in the light of the attending circumstances the defendant should have reasonably foreseen an accident of that character as a probable result of furnishing the tube to plaintiff in that condition. The manner in which the issue was submitted by the court, read in connection with the preceding general instruction relative to the duty which defendant owed to the plaintiff, was calculated to impress the jury with the idea that in determining the issue of defendant's negligence they could consider dangerous characters of the squib other than its leaky condition. Furthermore, the issue submitted expressly permitted the jury to take into consideration the weight suspended to the squib in determining whether or not the defendant was guilty of negligence, when the plaintiff's petition contained no allegation of negligence in that respect. Those errors in the court's charge were pointed out in objec-

tions made thereto by the defendant when the charge was submitted. For that error in the court's charge the judgment must be reversed, and the cause remanded. T. & P. Ry. v. Bigham, 90 Tex. 223, 38 S. W. 162.

[3] We overrule the further assignment to the action of the trial court in refusing defendant's request for an instructed verdict, which request was based upon the contention that, as a matter of law, the evidence introduced was wholly insufficient to support a verdict in plaintiff's favor. The plaintiff testified that it would have been impossible for the explosion to occur unless there was some of the nitroglycerin on the outside of the tube, and that there was no way for the same to get on the outside of the tube except that the tube was in a leaky condition, since he had thoroughly washed the outside of the tube before filling it with nitroglycerin.

In view of that testimony, considered in connection with other circumstances, we do not believe the trial court would have been warranted to give a peremptory instruction for a verdict in defendant's favor.

But, for the reason noted, the judgment is reversed, and the cause is remanded.